| | |
|---|---|
| Liza M. Walsh<br>Christine I. Gannon<br>Gerhard W. Buehning<br>**WALSH PIZZI O'REILLY FALANGA LLP**<br>Three Gateway Center<br>100 Mulberry Street, 15th Floor<br>Newark, NJ 07102<br>(973) 757-1100<br><br>*Attorneys for Defendant*<br>*Teva Pharmaceuticals, Inc.* | James Richter<br>**MIDLIGE RICHTER LLC**<br>645 Martinsville Road<br>Basking Ridge, New Jersey 07920<br>(908) 626-0622<br><br>*Attorneys for Defendants Lupin Inc. and*<br>*Lupin Pharmaceuticals, Inc.* |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAZZ PHARMACEUTICALS IRELAND LIMITED,<br><br>Plaintiff/Counterdefendant,<br><br>V.<br><br>LUPIN INC., LUPIN PHARMACEUTICALS, INC., and TEVA PHARMACEUTICALS, INC.,<br><br>Defendants/Counterclaimants. | Civil Action No. 21-14271 (SRC)(JSA)<br>(CONSOLIDATED)<br><br>~~CONFIDENTIAL~~<br><br>*Filed Electronically* |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO
STRIKE PORTIONS OF DR. RICHARD K. BOGAN'S EXPERT REPORT**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................ 2

III. ARGUMENT .................................................................................................................. 2

   A. Dr. Bogan's New Infringement Theory, Including the Underlying Rationale(s) were Not Disclosed in Plaintiff's Infringement Contentions ............................................................. 2

   B. Plaintiff's Reliance on Documents and Deposition Testimony Cannot Cure Its Failure to Disclose Its Infringement Theories ...................................................................................... 8

   C. Defendants Did Not Waive their Right to Seek to Strike Dr. Bogan's New Theories of Infringement ......................................................................................................................... 9

   D. Dr. Bogan's New Infringement Theory Should Be Stricken Under the *Pennypack* Factors and Local Rules ................................................................................................................. 11

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Celgene Corp. v. Natco Pharma Ltd.*,
  2014 WL 6471600 (D.N.J. Nov. 18, 2014) ........................................................................ *passim*

*Curia IP Holdings, LLC v. Salix Pharms., Ltd.*,
  2025 WL 1627251 (D.N.J. Feb. 18, 2025) ...................................................................................1

*Evolve Biosystems, Inc. v. Abbott Lab'ys*,
  2024 WL 4215804 (N.D. Ill. Aug. 16, 2024) ......................................................................10, 11

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
  2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ......................................................................10, 11

*Horizon Pharma AG v. Watson Laby's, Inc.*,
  2015 WL 12850575 (D.N.J. Feb. 24, 2015) .........................................................................3, 11

*Sol IP, LLC v. AT&T Mobility LLC*,
  2020 WL 10045985 (E.D. Tex. Apr. 23, 2020) ...........................................................................1

*Sonos, Inc. v. Google LLC*,
  2023 WL 2918751 (N.D. Cal. Apr. 12, 2023) ....................................................................10, 11

I.      INTRODUCTION

Plaintiff cannot refute that its Infringement Contentions do not disclose Dr. Bogan's ten-step infringement theory, including any of the underlying rationales which connect them. Instead, Plaintiff argues that Defendants should have inferred those undisclosed theories/rationales from review of thousands of pages of clinical study reports (which Dr. Bogan's 10-step theory does not cite or rely upon), along with deposition testimony and other documents produced during discovery that Plaintiff admits were not cited in its Infringement Contentions for the claim limitation at-issue. Local Patent Rule 3.1, and the cases cited by Plaintiff, make clear that expert reports cannot introduce new theories that were not disclosed in the Contentions.[1]

With no credible argument that the new theories and rationales were previously disclosed, Plaintiff all but concedes the point, and resorts to arguing that Defendants somehow waived any objection to its Contentions. But curiously, Plaintiff fails to explain how Defendants could have had notice of this new 10-step theory, its underlying rationales, or how its expert planned to string them together, until they received Dr. Bogan's report. The obligation to put Defendants on notice falls squarely on Plaintiff to timely disclose its infringement theories/rationales, not on Defendants to challenge barebones contentions earlier or to guess which infringement theories Plaintiff may strategically choose to present at trial. Because Plaintiff made the tactical decision to withhold its 10-step infringement theory and rationales until after fact discovery had closed, and to present it for the first time in Dr. Bogan's expert report, the Court should strike this new theory in its entirety.

---

[1] *See, e.g., Curia IP Holdings, LLC v. Salix Pharms., Ltd.*, 2025 WL 1627251, at *8 (D.N.J. Feb. 18, 2025) ("Infringement contentions are intended to provide a defendant with reasonable notice of a plaintiff's infringement theories."); *Sol IP, LLC v. AT&T Mobility LLC*, 2020 WL 10045985, at *1 (E.D. Tex. Apr. 23, 2020) ("Expert infringement reports may not introduce theories not previously set forth in infringement contentions.")

## II.     BACKGROUND

As addressed in Defendants' opening brief, this dispute concerns the following limitation in bold from claim 1 of the '373 Patent[2]:

> 1. A method of reducing food effect due to administration of gamma-hydroxybutyrate (GHB) in a patient having cataplexy in narcolepsy or excessive daytime sleepiness in narcolepsy, comprising: … ***wherein the pharmaceutical composition of GHB has reduced food effect as measured by Cmax compared to an equal dose of immediate release liquid solution of Na.GHB***, ….

With respect to this limitation, it is undisputed that Plaintiff's Infringement Contentions include only a single sentence (which does nothing more than parrot claim language):



(ECF No. 243-2, Ex. A at 612; *Id.*, Ex. B at 12.) In support, Plaintiff cited only (1) Defendants' package inserts and (2) more than 1,000 pages of clinical study reports—without any explanation, analysis or rationale connecting the cited materials to the claim language. (*Id.*)

## III.    ARGUMENT

### A.     Dr. Bogan's New Infringement Theory, Including the Underlying Rationale(s) were Not Disclosed in Plaintiff's Infringement Contentions

Plaintiff does not meaningfully dispute that its Contentions fail to disclose any of the ten steps of Dr. Bogan's infringement theory or their underlying rationales. Instead, it contends that Defendants should have anticipated Plaintiff's theory, as well as the rationales underlying and connecting each of the ten-steps, by postulating Plaintiff's intentions from voluminous documents and testimony they cited without discussion—many of which Plaintiff did not cite or otherwise rely on over the course of this litigation. This is precisely the kind of late-stage disclosure that the

---

[2] As the Court is aware from previous motion practice (ECF No. 141), Plaintiff previously asserted infringement of over 200 patent claims which further heightens the notice requirements.

Local Patent Rules are designed to prevent. As Plaintiff acknowledges and argues in *its motion to strike* Defendants' expert reports, a party's contentions require early, affirmative disclosure of the theories a party intends to pursue. *See* ECF No. 241 at 1 (citing *Celgene Corp. v. Natco Pharma Ltd.*, 2014 WL 6471600, at *2 (D.N.J. Nov. 18, 2014) ("[t]he rules 'are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."); *see also id*. (citing *Horizon Pharma AG v. Watson Laby's, Inc.*, 2015 WL 12850575, at *2 (D.N.J. Feb. 24, 2015) (the New Jersey Local Patent Rules were "designed to prevent the 'shifting sands' approach to a party's contentions.") (citation omitted).

As addressed below, Plaintiff's opposition does not even attempt to address, let alone credibly refute, that Dr. Bogan's new 10-step infringement theory or any of the underlying rationales connecting them (collectively and/or each step individually) is not presented in its Infringement Contentions.

*First*, Plaintiff does not deny that its Contentions make no reference to the specification of the '373 patent, let alone to the particular sections that Dr. Bogan relies on for the first time in his report (i.e., '373 Patent columns 35:1-39:3, 35:14-15, 36:10-19, 36:25-37, 37:56-38:9, 38:16-18, and Tables 4 and 7.) Instead, Plaintiff attempts to excuse this omission by arguing that the patent's Tables 4 and 7 allegedly summarize a certain portion of the data from a 500+ page clinical study report that is buried in its Contentions and makes no reference to the patent (or vice versa). Plaintiff's concession that Dr. Bogan "elected to rely on the summary data in the '373 patent in lieu of the voluminous study reports" is also inaccurate. (ECF No. 245 at 6.) Plaintiff tries to minimize in a footnote as "slight variation," the fact that Table 7 reflects a subset of only 33 of the 42 patients in the "voluminous" reports and, thus, is not the "exact data cited in Jazz's contentions" as it misleadingly argues to the Court. (ECF No. 245 at 6; *id*. at n.4.) Plaintiff never disclosed this

3

discrepancy or the patent's alternate dataset in its Contentions. Moreover, the first time any infringement theory based on Table 7 appears in this litigation is in Dr. Bogan's expert report, after the close of fact discovery, depriving Defendants of the opportunity to take full discovery regarding the first step of this new infringement theory and/or the acknowledged data discrepancies. Regardless, if Plaintiff intended to advance an infringement theory based on the '373 patent specification and/or partial datasets, it was required to identify that theory in its Contentions which it unquestionably failed to do.

**Second**, Plaintiff does not deny that Dr. Bogan relies on deposition testimony from Jazz inventor Clark Allphin, which was never cited or referenced in the Contentions. To be clear, the issue is not over reliance on subsequent deposition testimony in support of a previously disclosed infringement theory, but rather Plaintiff's improper use of such deposition testimony to introduce a new infringement theory that was not disclosed in the Contentions, without seeking leave of court under the Local Rules. On this, Plaintiff effectively concedes that Dr. Bogan uses this testimony to support a new theory: i.e., that "formulation 'O' in the '373 patent data-tables is Xywav®." (ECF No. 245 at 6). But that theory—linking Formulation O to Xywav®—is undeniably not disclosed in its Contentions, which contain no reference to Formulation O, the '373 patent specification, or any patent data. Plaintiff's remarkably argue that Defendants should have anticipated the theory based on testimony from Lupin's claim construction expert in November 2023. (ECF No. 245 at 6.) Defendants are not required to deduce Plaintiff's infringement theories from any deposition testimony (expert or otherwise). Plaintiff's failure to disclose the second step of its new theory in its Contentions violates the Local Patent Rules.

**Third**, Plaintiff does not deny that Dr. Bogan relies on "Mixture H" from a different patent (the '922 patent), and additional Allphin testimony—none of which were cited in its Contentions—

to support a new theory that links Mixture H from the '922 patent to Formulation O in the '373 patent. (ECF No. 245 at 7.) Setting aside the implications this may have for validity—since Mixture H is prior art and this admission by Plaintiff confirms inherent anticipation—for now, the key point is that this infringement theory was never disclosed in Plaintiff's Contentions. Plaintiff has not, and cannot, point to any reference to the '922 patent in its Contentions. Instead, Plaintiff once again asserts that Defendants should have anticipated the theory based on a statement in Teva's Invalidity Contentions. (*Id*.) But Defendants' disclosure of its invalidity theories does not excuse Plaintiff's failure to disclose its own theories. The record is clear: this third step in Plaintiff's new infringement theory improperly appears for the first time in Dr. Bogan's report and should be stricken.

  ***Fourth and fifth***, lacking any excuse for not disclosing the new infringement theories of Steps 4 and 5 in its Contentions, Plaintiff does not even attempt to address them. Instead, Plaintiff miscasts them as a "repackage [of] Defendants' second and third arguments, and they likewise lack merit." (ECF No. 245 at 7.) Not so. Having failed to present any rebuttal, Plaintiff concedes: (1) with respect to Step 4, that Dr. Bogan **proceeds [from Steps 2 and 3] to use** "the Allphin testimony to assert a purported link between 'Mixture H' of the '922 Patent and the commercial Xywav formulation," and that "[n]one of the Allphin testimony, the '922 Patent (including 'Mixture H'), the Xywav commercial product, nor any rationale connecting these elements, were disclosed in Plaintiff's Infringement Contentions" (ECF No. 243 at 4); and (2) with respect to Step 5, that "**Dr. Bogan proceeds to** compare the mixed salt percentages of the '922 patent's 'Mixture H' with those of 'Formulation O' of the '373 patent," and that "neither the '922 nor the '373 patents (nor their respective 'Mixture H' and 'Formulation O') were cited in the Infringement Contentions, nor was ***any analysis comparing*** these two formulations disclosed in Plaintiff's

5

Infringement Contentions." (*Id.*) Accordingly, both of these new theories should be stricken.

*Sixth*, Plaintiff does not deny that Dr. Bogan "equates the salt mixture in Formulation O of the '373 patent with the salt mixture in Xywav®." (ECF No. 245 at 7.) Instead, Plaintiff once again argues that Defendants should have deconstructed the theory based on "[h]undreds of pages of clinical study reports" (actually over a thousand) which do not "equate" any formulation in the '373 Patent to the commercial formulation. (*Id.*) Having effectively conceded that "no such comparison, rationale or equivalence" (ECF No. 243 at 5) was provided in Plaintiff's Contentions, the new theory should be struck from Dr. Bogan's report.

*Seventh*, with respect to Dr. Bogan's reliance on the Xywav® product label, Plaintiff points only to its identification of the product under Local Rule 3.1(g). (ECF No. 245 at 8.) But that reference does not disclose the infringement theory Dr. Bogan now advances, which involves a series of comparisons across different formulations from different uncited patents and datasets, or the rationale of how Plaintiff and its expert intend to try to connect and use that undisclosed information. A bare citation to Xywav under Rule 3.1(g) that is not specifically referenced in the context of the limitation at-issue does not come close to disclosing the multi-step infringement theory set out for the first time in Dr. Bogan's expert report, and it certainly does not "crystallize [Plaintiff's] theories." *Celgene*, 2014 WL 6471600, at *2.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ That family includes dozens of claims reciting various different salt percentages and is addressed in a separate expert report—one that

6

also includes positions not disclosed in its Contentions, but which Defendants elected not to challenge in an effort to narrow the disputed issues for the Court. In any event, it is improper for Plaintiff to rely on a different expert report addressing a different patent family to try to backfill a new theory that it never disclosed in its Contentions.

*Ninth*, Plaintiff does not deny that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Instead, Plaintiff again resorts to obfuscation by arguing that Defendants should have anticipated the theory from the contemporaneously served expert report of a different expert (Dr. Little), opining on a different patent (the '922 patent), and addressing an entirely different set of claims. (ECF No. 245 at 8.) Neither the report of a different expert, nor Dr. Bogan's report, can be used to try to fill in gaps in Plaintiff's Rule 3.1 Contentions. The point remains undisputed that this infringement theory was not disclosed, and was certainly not "crystallize[d]" as required. *Celgene*, 2014 WL 6471600, at *2.

*Tenth*, Plaintiff does not dispute that Dr. Bogan's theory reaches the ultimate conclusion: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ At the same time, Plaintiff does not even attempt to identify any corresponding disclosure of this new "inherent" infringement theory in its Infringement Contentions because there ***is no such disclosure***. Rather, Plaintiff once again miscasts this final step of its undisclosed theory as "simply nine previously-disclosed facts Defendants have been on notice of since the outset of this case, followed by a rather straightforward conclusion." (ECF No. 245 at 8-9.) Plaintiff's argument that "Defendants have

7

been on notice of" Plaintiff's intent to argue that the prior art Mixture H composition of the '922 Patent inherently provides the claimed food effect is baseless. The fact is, until now, Plaintiff has been taking the *opposite* position "since the outset of this case"—including in its contemporaneously filed motion to strike—i.e., that the composition disclosed in the prior art '922 patent does not inherently anticipate the claimed food effect. *See, e.g.*, ECF No. 241 at 4 (Plaintiff arguing in its motion to strike Defendants' expert reports, "In its responsive contentions, Jazz argued that … the pharmacokinetic claim limitation of the '373 patent is not inherent in the compositions of the '922 patent, and Lupin's invalidity argument fails.") Although this new admission by Plaintiff with respect to the prior art should be summary judgment-level dispositive of invalidity of the '373 Patent, it was never disclosed in this litigation until Dr. Bogan's expert report. ▬

This alone should resolve this motion in Defendants' favor.

    **B.**    **Plaintiff's Reliance on Documents and Deposition Testimony Cannot Cure Its Failure to Disclose Its Infringement Theories**

As for Plaintiff's argument that it satisfied its disclosure obligations "by citing ▬ Such a strategy is contrary to the requirement that Plaintiff disclose their crystallized infringement theories and adhere to those disclosed theories. *See Celgene*, 2014 WL 6471600, at *2.

8

The same applies to Plaintiff's attempt to justify its disclosure failures by referencing deposition testimony from a fact witness who observed that Xywav "surprisingly failed the bioequivalence criteria with Xyrem" at certain volumes. (*See* ECF No. 245 at 10–11 (citing ECF No. 245-1, Ex. E at 76:15–77:9).) Again, Plaintiff's Contentions cited two clinical study reports spanning more than 1,000 pages and provided no explanation in its Contentions as to how it intended to use that data to support infringement—let alone how that testimony related to the multi-step comparative theory presented in Dr. Bogan's report. Its Contentions are silent as to any reliance on Table 7, the '373 or '922 patents, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The later deposition testimony from a fact witness does not rectify Plaintiff's earlier disclosure failures, or failure to later seek leave to amend its Contentions.

The Local Patent Rules are intended to prevent precisely this type of unfair surprise. Plaintiff cites no authority – because there is none – that requires Defendants to decipher Plaintiff's infringement theory from ambiguous, voluminous document citations, or post hoc arguments based on deposition testimony. The Local Rules require early disclosure of infringement theories to allow Defendants to understand the a plaintiff's infringement theories and develop their defenses. That did not happen here—and Plaintiff's failure to comply should not be excused.

### C. Defendants Did Not Waive their Right to Seek to Strike Dr. Bogan's New Theories of Infringement

Plaintiff ultimately (and correctly) concedes that Dr. Bogan's infringement theory was not disclosed in its Rule 3.1 Contentions, but nevertheless claims—without legal or factual support—that Defendants waived their right to challenge it. That argument is baseless. As Defendants have explained, Dr. Bogan's report introduces entirely new theories of infringement that were never disclosed in its Contentions. Defendants could not have raised these issues earlier, because they had no notice or knowledge of these new theories until receiving Dr. Bogan's report. On April 29,

9

2025, just eight days after receiving Plaintiff's multiple voluminous expert reports, Defendants promptly raised these issues with Plaintiff, and subsequently timely filed the present motion. Defendants acted diligently and did not waive any rights.

None of the cases Plaintiff cites to support its waiver argument. In *Evolve*, the court denied a motion to strike because the moving party delayed raising the issue until after rebuttal reports, reply reports, depositions, and even a court conference. Yet even there, the court did not find waiver and addressed the motion on its merits, ultimately concluding the theory had been disclosed. *Evolve Biosystems, Inc. v. Abbott Lab'ys*, 2024 WL 4215804, at *7–10 (N.D. Ill. Aug. 16, 2024). Plaintiff's reliance on *Fenner* is similarly misplaced. The court never found waiver—it concluded there was no surprise because the theory was already disclosed and that the dispute was really about the merits of the theory, not a lack of notice. *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, 2010 WL 786606, at *4 (E.D. Tex. Feb. 26, 2010). *Sonos* is even further afield; the court there denied a motion to strike only after finding that the challenger waited "roughly nine months," took two depositions of the expert, and that any nondisclosure was harmless. *Sonos, Inc. v. Google LLC*, 2023 WL 2918751, at *4 (N.D. Cal. Apr. 12, 2023).

If anything, all of these decisions reinforce the core rule: an expert may not introduce new infringement theories not disclosed in the contentions. *See Evolve*, 2024 WL 4215804, at *3 ("Infringement contentions must set forth particular theories of infringement with sufficient specificity to provide defendants with notice beyond that which is provided by the mere language of the patents themselves."); *Fenner*, 2010 WL 786606, at *2 ("Expert infringement reports may not introduce theories not previously set forth in infringement contentions."); *Sonos*, 2023 WL 2918751, at *2 ("[Patentees] may not use expert reports to introduce new infringement theories.").

Plaintiff cannot bypass the Local Patent Rules by withholding its infringement theory until

expert discovery. If it intended to rely on Mixture H, Formulation O, the partial and questionable Table 7 data, etc., it was obligated to clearly disclose them in its Contentions. Plaintiff's failure to disclose is not excused by vague references to voluminous documents or a few lines of testimony. The Local Rules require parties to commit to their theories early so that opposing parties can take informed discovery and prepare defenses, especially when Plaintiff's theory apparently relied on information that was in Plaintiff's possession throughout the entire litigation. The ten-step infringement theory presented in Dr. Bogan's report was never disclosed and should be stricken.

### D. Dr. Bogan's New Infringement Theory Should Be Stricken Under the *Pennypack* Factors and Local Rules

Plaintiff argues that Defendants' cited caselaw is either inapplicable or somehow supports Plaintiff's position (ECF No. 245 at 13-15), and further contends that the *Pennypack* factors do not warrant exclusion (*id.* at 15-16). On this, the law is clear: an expert report may not advance new theories of infringement not disclosed in the contentions. Courts have consistently enforced this rule, and both sides' authorities reaffirm it. *See Celgene*, 2014 WL 6471600, at *2; *Horizon Pharma*, at *2 (citation omitted); *see also Evolve*, 2024 WL 4215804, at *3; *Fenner*, 2010 WL 786606, at *2; *Sonos*, 2023 WL 2918751, at *2. Yet that is precisely what Dr. Bogan has done. His report introduces a new ten-step infringement theory based on Formulation O from the '373 patent, Mixture H from the '922 patent, new comparative analyses, and reliance on partial datasets—specifically Table 7—that are not even reported in the clinical study reports cited in Plaintiff's Contentions. On this record, the *Pennypack* factors support exclusion.

Defendants were clearly prejudiced. Plaintiff's Contentions did not disclose any of the ten-steps, and the underlying rationales that form the basis of Dr. Bogan's report. As a result, Defendants were not afforded a fair opportunity to pursue discovery, including tailoring deposition questions to address these undisclosed theories and rationales. Discovery has closed, and

11

Defendants cannot re-open depositions or obtain additional documents to explore issues that were not properly disclosed. Allowing Plaintiff to proceed under these circumstances would undermine the purpose of the Local Patent Rules and effectively reward Plaintiff's failure to comply. Plaintiff's conduct also reflects bad faith. It asserted more than **200 claims** for most of the case, resisted Defendants' efforts to narrow those claims (ECF No. 141), and then unveiled a new ten-step theory in Dr. Bogan's expert report. Plaintiff always had access to the facts it now belatedly relies on. There is no justification for holding back its theory until expert discovery, and Plaintiff tellingly provides none. This is not inadvertence, but rather litigation strategy.

Exclusion is also compelled under Local Patent Rule 3.7, which prohibits amendments to contentions without court approval and requires a showing of good cause. Even if Plaintiff were to seek leave, it cannot meet the standard. Plaintiff possessed all of the factual bases from the outset and failed to act with any diligence.

## IV.  CONCLUSION

Defendants respectfully submit that paragraphs 332-334 of Dr. Bogan's expert report should be stricken.

Dated: July 25, 2025

Respectfully submitted,

*s/Liza M. Walsh*
Liza M. Walsh
Christine I. Gannon
Gerhard W. Buehning
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

OF COUNSEL:
Jonathan D. Ball, Ph.D. (*pro hac vice*)
Scott J. Bornstein (*pro hac vice*)

*s/James S. Richter*
James S. Richter
**MIDLIGE RICHTER, LLC**
645 Martinsville Road
Basking Ridge, New Jersey 07920
(908) 626-0622

OF COUNSEL:
Deepro R. Mukerjee (*pro hac vice*)
Lance A. Soderstrom (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, NY 10020
(212) 950-8800

Richard C. Pettus (*pro hac vice*)
Jonathan Presvelis (*pro hac vice*)
Omar A. Nesheiwat (*pro hac vice*)
Anne M. Rock (*pro hac vice*)
GREENBERG TRAURIG LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200

Jonathan Wise (*pro hac vice*)
GREENBERG TRAURIG LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
(215) 988-7800

Benjamin D. Witte (*pro hac vice*)
GREENBERG TRAURIG LLP
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0500

*Attorneys for Defendant*
*Teva Pharmaceuticals, Inc.*

Jitendra Malik (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
550 South Tyron Street, Suite 2900
Charlotte, NC 28202
(704) 444-2000

Matthew M. Holub (*pro hac vice*)
Jillian M. Schurr (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5200

*Attorneys for Defendants Lupin Inc. and Lupin Pharmaceuticals, Inc.*

13